

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00188-CR

_____

BRADNEY RANDALL SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 09-0412X

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

Bradney Randall Smith, Courtne' Robinson, and Travion Young agreed to burglarize the home of Frank and Arnola Zabokrtsky. During the burglary, Frank was killed by Robinson, and Arnola was sexually assaulted by Young. The jury charge authorized Smith's conviction for capital murder upon a finding that Smith, acting alone or as a party, intentionally caused the death of Frank while in the course of burglary of a habitation or robbery. Smith was convicted of capital murder and sentenced to life imprisonment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071 (West Supp. 2012); TEX. PENAL CODE ANN. § 19.03 (West Supp. 2012).

Smith first argues that the trial court erred in admitting evidence concerning the sexual assault because the danger of unfair prejudice of that evidence substantially outweighed its probative value. Smith's second issue claims the evidence is insufficient to convict him under the law of parties because no rational person could have concluded Smith knew or anticipated murder would be committed in the course of burglary of a habitation or robbery. Smith's remaining issues allege the following jury charge errors caused egregious harm: instructing the jury concerning direct responsibility when it was undisputed that Robinson, not Smith, fired the shot that killed Frank, failing to instruct the jury that the robbery was of Frank, failing to instruct the jury that the burglary was of Frank's house, and failing to instruct the jury they must be unanimous concerning which of the State's alternative theories occurred. We affirm Smith's conviction.

## I.  Facts

Arnola, who was eighty-two at the time the crime occurred, testified that she and Frank had been married sixty-two years and had lived in the same house for forty years.  On September 20, 2009, Frank and Arnola awoke in bed to see Young, with his face covered by a bandanna, pointing a gun at them.  Smith and Robinson were also in the bedroom, and all three intruders had guns.  Young demanded "to know where [her] money was."  Arnola was ordered out of the bed, tied to a nearby lawn chair,[1] and had her pajama top ripped open.  As Young grabbed Arnola's ankles and started to drag her out of the bedroom, Frank, who was resisting, was shot by Robinson.[2]  Young dragged Arnola into the bathroom where he raped her while she was still tied to the collapsed lawn chair.

Arnola testified Young left the bathroom to talk with the other intruders.  When Young returned, he had Arnola dress and then taped her hands.  Arnola was escorted into the garage and ordered into the trunk of her car.  The intruders drove Arnola to a deserted tract of land, backed the car into some bushes, locked the car, and abandoned the car with the motor running.  Arnola testified that Frank had shown her a lever in the trunk of the car which releases the trunk.  Although she could not find the lever in the dark, she was able to observe a wire by light from the brake lights reflecting into the trunk.  When pulled, the wire released the trunk.  Arnola, seeing the intruders had left, used the car's keyless entry to unlock the car and drove away hitting a tree in the process.

---

[1]Frank used the lawn chair when he was putting his shoes and socks on.

[2]Frank later died at the hospital.  Dr. Robert Palmer testified that Frank's death was "directly caused" by the gunshot wound.

Arnola testified that she passed the three intruders walking on the side of the road as she drove to the police station. Officer Kenneth Phillips, a police officer with the Marshall Police Department, observed three African-American males, matching the description given by Arnola, walking along some railroad tracks. All three complied with Officer Phillips' command to get on the ground but Smith fled while Officer Phillips was cuffing him. Officer Jason Mobley pursued and detained Smith after a brief chase. Frank's wallet and driver's license were found in Smith's pocket. One weapon, a handgun, was discovered near Robinson's feet. Young had gloves and Frank's prescription medicine bottle in his pocket.

During a police interrogation, Smith admitted to participating in the burglary. The revolver found at Robinson's feet had one fired cartridge and five unfired. A forensic analysis on the gun determined it fired the bullet recovered from the Zabokrtskys' mattress. DNA reports were admitted.[3]

## II.    Admitting Evidence Concerning the Sexual Assault Was Not an Abuse of Discretion

Smith first argues that the trial court erred in permitting the State to introduce evidence of the sexual assault of Arnola by Young because the evidence had no probative value and the danger of unfair prejudice was extreme. *See* TEX. R. EVID. 403.

The State argues Smith failed to preserve error for appellate review because the trial court merely denied a motion in limine and Smith failed to object when the evidence was admitted. Although we agree a request made in a motion in limine does not preserve error for appellate

---

[3]DNA reports, admitted by stipulation, excluded Robinson and Smith from the "nonspecific constituents of semen" on Arnola's pajamas, but did not exclude Young within a probability of "1 in 46 Caucasians, 1 in 34 for Blacks, and 1 in 49 for Hispanics." Arnola could not be excluded from a DNA mixture found on Young's shorts within a probability of "1 in 10.80 million for Caucasians, 1 in 9.058 million for Blacks, and 1 in 22.75 million for Hispanics."

review,[4] we disagree with the State's characterization of the record. A motion in limine requests that the opposing party be directed to approach the trial court before offering certain types of evidence, asking certain questions, or otherwise going into particular areas before the jury. *Thierry v. State*, 288 S.W.3d 80, 86–87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). Smith's request was not for a motion in limine.

Smith requested, outside the presence of the jury, a ruling on the admissibility of the evidence. At the beginning of trial and outside the presence of the jury, the defense argued:

> [Defense counsel]: It is my belief and intention -- that the State's intention is to offer up through parties the sexual assault of Mrs. Zabokrtsky, if I'm saying her name correctly. I don't know.
> My objection and the reason we're doing this is, I believe he'll do it in opening statement, that he will do this opening statement and throughout the trial, and we're going to object to the prejudicial nature of it.
>
> . . . .
>
> Judge, my position is that working on a common goal in a burglary or a robbery or a murder, that sexual assault is not within that common goal.
> Anything violent that may have happened in trying to get away, we understand that something would have happened -- you know, we're not saying -- I'm not objection [sic] to the murder. We understand that comes in. No doubt.
> The kidnapping, that comes in. No doubt. Because that is a common goal in getting away with theft. But the sexual assault itself could not be anticipated in that fact.
> And I believe the parties offense, in conjunction with continuing course of criminal action, is conflicting, and that's why we're asking you to set it as prejudicial at this time.
>
> . . . .

---

[4]*Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

> [The State]:    Judge, there's this concept in the law called same transactional contextual evidence, and it says that the jury cannot be left to look at the situation in a vacuum.
>
> . . . .
>
> THE COURT:  . . . . I'm going to allow it in. . . .

Smith requested a ruling on the admissibility of the evidence, the State interpreted the objection as a request for a ruling on the admissibility of the evidence, and the trial court ruled on the admissibility of the evidence.

It is well established that a ruling on the admissibility of the evidence outside the presence of the jury preserves error for appellate review without the necessity of repeating the objections when the evidence is admitted in front of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez*, 98 S.W.3d at 193; *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991); *Loun v. State*, 273 S.W.3d 406, 420 n.22 (Tex. App.—Texarkana 2008, no pet.).  The admissibility of evidence relating to the sexual assault is preserved for appellate review.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  An appellate court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

If the opponent of proffered evidence objects on the grounds that the evidence constitutes an extraneous offense, "the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value." *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). As argued by the State, the sexual assault was "same transaction contextual evidence and, as such, admissible without a limiting instruction." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Same transaction contextual evidence consists of "evidence of other offenses connected with the primary offense" and is admissible under Rule 404(b) of the Texas Rules of Evidence when several offenses are so intertwined as to form a single, indivisible criminal transaction and it is impracticable to describe the offenses separately. TEX. R. EVID. 404(b); *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *accord McDonald*, 179 S.W.3d at 577; *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000).

The Texas Court of Criminal Appeals recently noted, "The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Similar to *Devoe*, both the charged offense and the sexual assault were committed during a single crime spree. *Id.* The crimes were committed simultaneously during the same burglary. In fact, Young was in the process of assaulting Arnola when Robinson murdered Frank in the same room. The gun discharged while Young was dragging Arnola into the bathroom to be raped.

The facts of the case would have been incomplete and difficult to follow had the sexual assault been excised from the sequence of events. It occurred while Frank was being killed and

7

before Arnola was kidnapped and locked in her car. This evidence was relevant and allowed the jury to understand the events of the criminal episode; the jury was entitled to hear of these interwoven and related facts.[5] *See Drakes v. State*, 505 S.W.2d 892, 894 (Tex. Crim. App. 1974) (defendant charged with sexual assault; evidence of earlier sexual assault by co-defendants properly admitted as part of same transaction).

Even if evidence is relevant beyond its character conformity value, Rule 403 of the Texas Rules of Evidence may still bar its admission if the probative value of the evidence is substantially outweighed by its potential for unfair prejudice. TEX. R. EVID. 403; *Santellan*, 939 S.W.2d at 169. The analysis is guided by the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (revising four factors first recognized in *Montgomery*, 810 S.W.2d at 389–90).

Smith argues all of the factors weigh against admission. We disagree. Nothing indicates the jury decided the capital murder charge on an improper basis. The probative force of the evidence and the State's need for the evidence both favor admission. The sexual assault was critical to a full understanding of the charged crime and did not confuse the jury. The sexual

---

[5]Smith does not specifically argue that the evidence was barred by Rule 404, but urges that such evidence is so prejudicial that it should be prohibited by Rule 403. *See* TEX. R. EVID. 403, 404.

8

assault took minimal time to develop—less than ten pages of a 600-page record—and any distraction was minimal.

The trial court's balancing of the *Montgomery* factors was within the zone of reasonable disagreement. As observed by the Texas Court of Criminal Appeals, "When the balancing test is applied, [same transaction evidence] is almost always admissible under the reasoning that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated." *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986). We conclude the trial court did not abuse its discretion.

## III. The Evidence Is Sufficient

In his second issue, Smith argues the evidence is legally insufficient[6] for a rational jury to conclude beyond a reasonable doubt that Smith knew or should have anticipated someone might be killed. The State argues the conclusion that Smith knew or should have anticipated a murder is a reasonable inference from the evidence.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to

---

[6]Texas law is clear that sufficiency of the evidence cannot be forfeited and does not need to be preserved for appellate review. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).

draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

"A person can be convicted of capital murder as a party to the offense, without having had the intent to commit the murder." *Ex parte Martinez*, 330 S.W.3d 891, 901–02 (Tex. Crim. App. 2011). Although the indictment did not allege party liability, the trial court, without objection, instructed the jury both on party liability under Section 7.02(a) and liability for a co-conspirator under Section 7.02(b).[7] *See* TEX. PENAL CODE ANN. § 7.02 (West 2011). Under the law of parties, as codified by Section 7.02:

> (a)     A person is criminally responsible for an offense committed by the conduct of another if:
>
> . . . .
>
> (2)     acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> . . . .
>
> (b)     If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

---

[7]We note the Texas Court of Criminal Appeals has repeatedly held the law of parties, including liability for a co-conspirator under Section 7.02(b), does not have to be pled in the indictment. *See, e.g.*, *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (law of parties not required to be pled in indictment); *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) (Section 7.02(b) not required to be pled in indictment); *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978) (Section 7.02(b) not required to be pled in indictment). Smith has not alleged, at trial or on appeal, the instruction on either 7.02(a) or 7.02(b) was in error.

TEX. PENAL CODE ANN. § 7.02; *see Ex parte Thompson*, 179 S.W.3d 549, 552 (Tex. Crim. App. 2005) (Section 7.02(a) for capital murder requires intent to promote or assist murder, not just intent to promote or assist underlying felony); *Tippitt v. State*, 41 S.W.3d 316, 323 (Tex. App.— Fort Worth 2001, no pet.), *overruled on other grounds by Hooper*, 214 S.W.3d at 15 (rejecting *Tippitt*'s application of inference stacking doctrine). The State restricts its argument on appeal to liability under Section 7.02(b).

The State argues the evidence is sufficient for the jury to conclude Smith should have anticipated a murder and is, therefore, liable as a co-conspirator under Section 7.02(b). A co-conspirator, though having no intent to commit it, is guilty of a felony committed by another co-conspirator if the felony "was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." *Thompson*, 179 S.W.3d at 552. Thus, the State was not required to prove intent to commit murder but rather only a conspiracy to commit robbery or burglary, that the murder was committed in furtherance of the commission of robbery or burglary and that a murder should have been anticipated. Smith only challenges the last element of proof and argues there was insufficient evidence he should have anticipated the murder.

We agree with the State that the jury could reasonably infer murder should have been anticipated. Smith confessed that he, Robinson, and Young agreed to do a "lick," which is a slang term for robbery or burglary. Smith also admitted they intentionally sought a house occupied by old people who would be easier to control. They prepared for the crime by bringing

11

guns,[8] bandanas to mask their faces, gloves, and condoms. A juror could reasonably infer that by bringing condoms, a sexual assault was also an intended purpose of the conspiracy.[9] As argued by the State, the violent malicious behavior of the three while committing the burglary supports a conclusion that murder should have been anticipated.[10] It is entirely reasonable for a juror to conclude murder should be anticipated during a night home invasion involving armed robbery and sexual assault. The evidence is sufficient.

## IV. The Record Does Not Support a Finding of Egregious Harm

Smith's remaining four issues allege unpreserved[11] jury charge error resulted in egregious harm. In analyzing a jury charge complaint, we review the charge under the *Almanza* standard. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). We first determine whether error exists in the charge and then, if there was error, whether sufficient

---

[8]Smith denied knowing of the presence of guns during his police interrogation and argues a rational juror could not have believed Arnola's testimony that all three intruders had guns. Smith argues this testimony was a single statement and was inconsistent with the remaining evidence. Smith directs our attention to the facts that only one gun was found by the police and that gun was discovered next to Robinson's feet. We disagree with the contention that a rational juror could not have believed all three intruders had guns. Although the police only recovered a revolver, Arnola described at least one of the guns as a "long-barreled gun" or "small rifle" with a "short" or "medium-long" barrel. This description is inconsistent with a revolver. Arnola also testified about a brief stop made minutes after leaving her house. A rational juror could have concluded the two missing guns were hidden or otherwise disposed of prior to the arrest.

[9]At trial, Smith pointed out that it would not be unusual for a twenty-year-old man to routinely carry condoms. The jury could reject such an explanation. For the purposes of an appellate sufficiency of the evidence review, the State is no longer required to disprove every reasonable alternative hypothesis. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd).

[10]Frank had facial lacerations, blunt force trauma, and a bad eye consistent with being pistol whipped. Young violently beat and raped an eighty-two-year-old woman without any interference by Robinson or Smith. Arnola was then left in the woods in the trunk of a locked car with the motor running.

[11]At the charge conference, Smith did not object to any of the deficiencies argued on appeal.

harm resulted from the error to compel reversal. *Ngo v State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. When a proper objection is made at trial, reversal is required if the error is "calculated to injure the rights of defendant"—the appellant need only demonstrate "some harm" on appeal. *Id.*; *see also Almanza*, 686 S.W.2d at 171. In the case of unpreserved error, reversal is required only when "the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). "Egregious harm" results from errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.).

## A. The Inclusion of a Direct Responsibility Instruction Did Not Result in Egregious Harm

Smith argues in his third issue that the trial court erred in including an instruction on direct responsibility in the jury charge and that such error resulted in egregious harm. Robinson admitted to killing Frank, and the record contains no evidence disputing this confession. Arnola identified Robinson in a photographic lineup as the man who shot her husband. As argued by Smith, all of the evidence concerns party responsibility, not direct responsibility.

The Texas Court of Criminal Appeals has held that it is error to include a charge on direct responsibility when the evidence supports only party responsibility. *See Watson v. State*, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985). Texas Courts, though, have uniformly found this error to be harmless. *See, e.g.*, *id.* at 942; *Reyes v. State*, 741 S.W.2d 414, 427 (Tex. Crim. App. 1987); *Payne v. State*, 194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Bruton v. State*, 921 S.W.2d 531, 537 (Tex. App.—Fort Worth 1996, pet. ref'd); *Stevenson v. State*, 745 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1987, no pet.).

Smith argues this case is distinguishable from *Watson*, 693 S.W.2d at 941, because the State argued direct liability to the jury in its closing argument. We have reviewed the record citation provided and found no reference to either direct liability or party liability on that page, the immediately preceding page, or the immediately following page. Two pages later, the State argues, "Now, again, conspiracy. How do we prove that he is aiding or attempts to aid? . . . ." The State later argued, "Did he shoot Mr. Zabokrtsky? No. Nobody disagrees with that." In its opening statement, the State only argued Smith should be found guilty as a party. Similar to *Watson*, the State's sole theory was based on party liability.

The jury was instructed they had to find guilt beyond a reasonable doubt. Given that the record contains no evidence of direct responsibility, the jury could not have been misled by the principal language in the charge. The degree of harm demonstrated by an appellant must be actual, not merely theoretical. *Almanza*, 686 S.W.2d at 174. The error alleged here is merely theoretical, and the record does not support a finding of egregious harm.

**B. The Omission of Frank Zabokrtsky as the Owner Did Not Result in Egregious Harm**

Smith, in his fourth and fifth issues, argues the trial court erred in omitting the requirement that the jury find Frank was the person robbed and erred in omitting the requirement that the jury find Frank's residence was the place burglarized. The State alleged Smith committed capital murder by committing murder either during the course of a robbery of Frank or during the course of a burglary of the habitation of Frank. The issue of ownership is an element of the offense of robbery. *See House v. State*, 105 S.W.3d 182, 184 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Likewise, the issue of ownership is an element of burglary. *See Lagunas v. State*, 187 S.W.3d 503, 521 (Tex. App.—Austin 2005, pet. ref'd).

Prior to *Almanza*, the Texas Court of Criminal Appeals recognized omission of the owner's name in the application paragraph for capital murder was not fundamental. *See Selvage v. State*, 680 S.W.2d 17, 21 (Tex. Crim. App. 1984). Similarly, this case does not support a finding of egregious harm. The record only contains evidence of one robbery. The record also contains evidence of only one burglary—that of Frank's residence. Smith does not explain how the omission could mislead the jury. Under the facts of this case, it is clear the error was merely theoretical and the harm, if any, was clearly not egregious harm.

**C. The Failure to Include a Unanimity Instruction on the Aggravating Factors Was Not Error**

In his sixth and final issue, Smith argues the trial court erred in omitting a specific unanimity instruction. The result of this omission, according to Smith, permitted the jury to render a non-unanimous verdict on both the underlying felony and whether Smith was liable as a

15

principal or as a party. Smith claims he could have been found guilty based on the combination of four theories—either burglary or robbery and either direct or party responsibility. Smith argues the jury should have been instructed it must agree unanimously on a single alternative theory.

The Texas Court of Criminal Appeals has recently held that a jury charge does not have to include a unanimity instruction on whether the defendant acted as a principal actor or as a party. *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011). Similarly, the Texas Court of Criminal Appeals has held that the jury charge for capital murder, a result-oriented offense, does not require jury unanimity for all the various theories contained in Section 19.03 of the Texas Penal Code, so long as the same victim is alleged for the predicate murder. *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010); *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *see* TEX. PENAL CODE ANN. § 19.03. The first prong of *Almanza*—the existence of error—has not been met.

We overrule Smith's sixth issue.

We affirm the judgment of the trial court

Jack Carter
Justice

Date Submitted:     July 5, 2013
Date Decided:       July 25, 2013

Publish

16