

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00056-CR

_____


DONALD JEAN DEPRIEST, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 413th District Court
Johnson County, Texas
Trial Court No. F49867



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Working through the agency of confidential informant Waylon Gardner, officials with the Johnson County[1] Sheriff's Office (JCSO) set up and conducted two separate controlled purchases of methamphetamine from Donald Jean Depriest. From two convictions[2] for delivery of a controlled substance, convictions resting largely on Gardner's testimony, Depriest appeals, claiming that Gardner's testimony supporting his guilt was insufficiently corroborated for each offense and that the jury was improperly charged.

We affirm the trial court's verdict because (1) Gardner's testimony was sufficiently corroborated and (2) error in the jury charge did not cause egregious harm.

*(1)     Gardner's Testimony Was Sufficiently Corroborated*

Gardner's work as a confidential informant was with the Stop The Offender Program (STOP) Special Crimes Unit in Johnson County, Texas, and Gardner volunteered to case agent, Investigator Andrew Riggs, that Gardner could purchase methamphetamine from Depriest, whom he knew only as "Donnie." On October 14, 2014, the expected date of the controlled drug buy, Gardner met with Riggs, STOP agents searched Gardner's person and vehicle to satisfy themselves

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2]Though the delineation of the two counts is not relevant to this appeal, Count One alleged Depriest's sale of at least one gram but less than four grams of methamphetamine on or about October 16, 2014, and Court Two alleged Depriest's sale of under one gram of methamphetamine on or about October 14, 2014. Count One involved the agreement to purchase a "teener," or 1.7 grams for $100.00, though the actual weight of the drug in this instance was testified to have been 1.06 grams. Count One resulted in a sentence of sixteen years' imprisonment, and Count Two resulted in a sentence of two years' confinement, the two sentences to run concurrently. Despite the indictment alleging two felony enhancement paragraphs, the State presented and argued only one enhancement, on Count One, to which Depriest pled "not true." After a hearing on punishment, the jury found the enhancement paragraph true.

that he had no illegal drugs, and Gardner was given both money with which to purchase the drugs and a hidden device to record the images and sounds of the transaction. Riggs told Gardner where to meet the STOP team after the drug purchase, and Gardner was warned not to keep any of the drugs for himself. From there, in a separate vehicle, the STOP officers followed some distance behind Gardner to 7220 Timber Road, near Alvarado in Johnson County, Texas, where Depriest lived in a recreational vehicle (RV) or camper. Gardner met Depriest outside the camper, where he paid Depriest $40.00 for approximately half a gram of methamphetamine. Gardner then drove to the meeting place where Riggs took the drugs from Gardner, and the STOP officers again searched Gardner's person and vehicle, again finding no other drugs. Gardner received $100.00 from STOP as compensation.

Two days later, on October 16, Gardner told Riggs that he had negotiated to buy a "teener," or about 1.7 grams, of methamphetamine from Depriest for $100.00. Gardner met with the STOP officers before the purchase, where Investigator Mark Goetz put a recording device on Gardner's cellphone. When Gardner called "Donnie" to verify the upcoming purchase, the officers recorded the call. As before, the officers searched his person and vehicle and, finding no drugs, supplied him with purchase money and a hidden audio- and video-recording device. The officers followed Gardner as he again drove to 7220 Timber Road, met Depriest at his camper, bought the drugs, and left, returning to the designated meeting place with the STOP officers. The officers searched Gardner and his vehicle, took the methamphetamine he purchased (found to weigh 1.06 grams), and, finding no other illegal drugs, left the scene. STOP paid Gardner $200.00 for his participation in this transaction.

3

At trial, Investigators Riggs and Goetz testified for the State, and Gardner testified that, on both October 14 and October 16, he purchased methamphetamine from Depriest. The methamphetamine allegedly purchased from Depriest was admitted into evidence, and the recorded telephone call as well as the audio/video recordings of the two drug transactions were played for the jury.

In two points of error, Depriest argues that there is legally insufficient evidence to support his convictions because the State's evidence failed to adequately corroborate the confidential informant's testimony.

In a case such as this, any testimony from a confidential informant must be corroborated by other evidence tending to connect the defendant with the alleged offense. TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). We review such corroboration in the same manner and by the same measure as we would review corroboration of testimony from an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

> To adequately corroborate Taylor's testimony,
>
> there [must] be *some* [other] evidence which *tends* to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the [confidential informant] testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense.

*Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (quoting *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997)). "To determine the sufficiency of the corroboration, we eliminate the testimony of the [confidential informant] and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does

4

not directly link the accused to the crime." *Id.* at 461 (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). We must view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (reviewing sufficiency of accomplice witness testimony).

We focus, now, on the corroborating evidence. Riggs testified that Gardner claimed he had purchased drugs from Donnie in the past. On the occasion of both transactions, officers followed Gardner and watched him "turn[] in to the driveway" at 7220 Timber Road, while the officers "waited just around the corner." After being there only a few minutes, Gardner left, and officers immediately followed him to a meeting place. Officers testified that, on both dates, Gardner had no drugs in his vehicle or possession before his arrival at 7220 Timber Road, but he had methamphetamine in his possession after he left. Riggs testified that Gardner "was followed to and from the location, [that] while he was outside [Riggs'] presence, his actions were being recorded," and that nothing indicated that Gardner could have obtained the methamphetamine from any other source.

Laberta Depriest, the defendant's sister, testified that, while her brother lived with them at 7220 Timber Road, he was "in and out . . .[;] he would come and go." She testified that, at the time of these events, her brother spent a lot of time in an RV that was also on the property and that he was the only person living, staying, or "hanging out" in the RV. Riggs testified that police records showed that Depriest had been using the 7220 Timber Road, Alvarado, Texas, address since 1990 and that, when he made a surprise visit to the property December 10, 2014, Depriest was there.

On the video recording of the October 14 transaction, one can see a poor-quality, dark, and blurry image of a man's face. Riggs testified that, by comparing the recording with Depriest's driver's license photograph and his prior "book-in photos," he believes Depriest was the man shown in the video. Just a few minutes before the October 16 transaction, Gardner placed a telephone call to "Donnie" telling him that he would be there in fifteen minutes to "get that teener."

There is evidence connecting Depriest to the RV at 7220 Timber Road, and the jury could have reasonably inferred that Donald Depriest, the man seen during the first drug transaction inside the RV, was the same "Donnie" referred to in the telephone call from the second transaction.[3] Viewing the evidence in the light most favorable to the verdict, we find that Gardner's testimony regarding both of the transactions was corroborated by reliable evidence tending to connect Depriest to the offense of delivery of methamphetamine. Therefore, we overrule Depriest's two issues regarding corroboration.

*(2)*     *Error in the Jury Charge Did Not Cause Egregious Harm*

Depriest also asserts error in the jury charge.

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *Thomas v. State*, 454 S.W.3d 660, 664 (Tex. App.— Texarkana 2014, pet. ref'd). Initially, we determine whether an error occurred; if so, we determine whether the error was sufficiently harmful to require reversal. *Abdnor*, 871 S.W.2d at 731–32;

---

[3]Depriest argues that the testimony failed to verify that the telephone number belonged to Depriest or that Depriest was the voice heard on the recorded telephone call. However, the recording and testimony regarding it was admitted at trial, and though Gardner began the call with, "Hey, Donnie," the person answering did not correct him or tell him he had the wrong number.

6

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

> The court's charge on punishment included the following pertinent instructions:

> In regards to Count One, under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or fifteen (15) years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

The State concedes that, as the offense alleged in Count One was not an aggravated offense, the jury should have been charged in accordance with Section 4(b) of Article 37.07 of the Texas Code of Criminal Procedure—meaning that the pertinent portion of the charge above should have read that Depriest "will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-fourth of the sentence imposed." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (West Supp. 2016) (emphasis added). Therefore, it was error to omit the phrase from the jury charge.

Next, we discuss whether the failure to include the omitted phrase harmed Depriest. The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. When a proper objection is made at trial, reversal is required if the error is "calculated to injure the rights of defendant"—the appellant is obliged to demonstrate only "some harm" on appeal. *Id.*; *see also Almanza*, 686 S.W.2d at 171. In the case of unpreserved error, reversal is required only when "the error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Rudd v. State*,

7

921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). "Egregious harm" results from errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Smith v. State*, 424 S.W.3d 588, 597 (Tex. App.—Texarkana 2013, no pet.).

We first determine that the error was not preserved. A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Id.*

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

8

Depriest made this objection at trial:

> Until actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less is not an accurate statement of parole law . . . because eligibility for parole changes regularly, and that's based on the parole board. It's not automatically going to be one-fourth. But more to the point, it's telling the—giving the Jury a formula that they can use in their deliberations after the same Charge tells them not to do that.

(internal quotation marks omitted). On appeal, however, Depriest contends that the court's charge on punishment was erroneous because it omitted the phrase "plus any good conduct time earned."

While he argued at trial that the charge was an inaccurate statement of parole law, Depriest failed to explain how or why the charge was inaccurate. *See Resendez*, 306 S.W.3d at 312. Furthermore, his point of error on appeal fails to comport with the objection made at trial. *See Wilson*, 71 S.W.3d at 349; *see also Swain*, 181 S.W.3d at 367. Therefore, Depriest failed to lodge a proper objection to the charge and must show egregious harm in order to prevail. *See id.*; *Resendez*, 306 S.W.3d at 312; *Almanza*, 686 S.W.2d at 171.

Four relevant factors to consider in an egregious-harm analysis regarding an erroneous parole law instruction are (1) the presumption that the jury followed the court's instructions, (2) whether there was a jury note regarding parole or good-conduct time, (3) whether the State emphasized the possibility of parole in argument, and (4) the severity of the defendant's sentence. *Hooper v. State*, 255 S.W.3d 262, 271–72 (Tex. App.—Waco 2008, pet. ref'd). Here, the charge specifically admonished the jury that it could consider the existence of parole law and good conduct time, but that, in assessing punishment, it could not "consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant." There is nothing in the record to overcome the presumption that the jury followed the court's instruction. *See Hooper*,

9

255 S.W.3d at 271. There were no notes from the jury regarding parole or good conduct time. In its closing argument, the State urged the jury to ignore Depriest's possible parole eligibility in determining a sentence and to "[g]ive him the number that you think he's [sic] actually deserved, not what you think he's actually going to serve" under the parole and good conduct guidelines given in the charge. Depriest faced the enhanced punishment range of five years to ninety-nine years or life in prison, and even though there was evidence that he had been convicted of several prior felonies, the jury assessed a punishment of only sixteen years' imprisonment. Accordingly, we cannot say Depriest suffered harm, let alone egregious harm, from the erroneous parole law instruction. *See Stewart v. State*, 293 S.W.3d 853, 856–62 (Tex. App.—Texarkana 2009, pet. ref'd); *Hooper*, 255 S.W.3d at 272–73.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:    August 24, 2016
Date Decided:      October 13, 2016

Do Not Publish