

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00062-CR

_____

JAY WARREN ARNOLD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 54th District Court
McLennan County, Texas
Trial Court No. 2013-08-C2

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A jury convicted Jay Warren Arnold of family violence aggravated assault and aggravated kidnapping. For each offense, the trial court sentenced Arnold to sixty years' imprisonment and ordered him to pay a $10,000.00 fine. On appeal, Arnold argues that the trial court erred in admitting an audio/video recording of his pre-arrest detention because (1) it was irrelevant and (2) its probative value was substantially outweighed by a danger of unfair prejudice.

We conclude that the trial court correctly determined that the recording constituted relevant evidence. We further conclude that the trial court did not abuse its discretion in determining that the probative value of the video recording was not substantially outweighed by a danger of unfair prejudice. Accordingly, we affirm the trial court's judgment.[1]

## I.    Factual Background

Arnold and his wife, Katie, were having marital problems, and Katie was considering a divorce. On November 16, 2012, Arnold picked up his three children from school and waited for Katie to return home from work. According to Katie, after Arnold consumed half of a "large bottle of rum," he approached her in a "very aggressive" manner and began arguing with her as soon as she got home. He then went to the kitchen to pour himself another drink, followed Katie to the bathroom, closed the bathroom door behind him, and continued arguing with her about their marriage.

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

Katie testified, "[Arnold] wanted a commitment that I would stay with him and make [the] marriage work." After the argument, Arnold left the bathroom, giving Katie the opportunity to notice that Arnold had taken her purse, cell phone, and keys. Because Arnold had threatened to take the children during the argument, Katie gathered them, hid with them in the upstairs bathroom, and locked the door. When Arnold discovered that they were hiding from him, he became angry and "busted right through the door." After letting the children leave, Arnold restrained Katie in the bathroom, and the two began arguing again. This time, however, Arnold's rage propelled him to physical violence.

Katie testified that Arnold pushed her against the bathroom wall, causing her to fall into the tub. After she fell, Arnold told Katie that he was going to leave with the children, causing Katie to stand up and chase after him. She testified, "By the time I caught up to him, he was already . . . going through a doorway[,] . . . and he turned and slammed the door into . . . my face . . . and charged at me, pushing me down on the stairs and getting on top of me." Katie said that Arnold grabbed her by both of her wrists, pulled her up two flights of stairs, placed her in a headlock, and dragged her to the garage while she was "kicking, screaming, clawing, [and] fighting." Katie testified that Arnold grabbed a spool of wire, pushed her against an exposed stud, and wrapped the wire tightly around her neck several times "like a bread tie" so that she was restrained to the stud by her neck.

Katie was choking and thought she was going to die. She testified, "[E]verything started to fade out and got . . . black . . . I feel like I went somewhere else." As she was on the verge of death, Arnold loosed the wire noose, and Katie regained consciousness. Katie decided to tell

3

Arnold "whatever he wanted to hear" in order to calm him down. Arnold calmed down, and he agreed to allow Katie, who was bloodied and had urinated on herself, to shower.

Arnold followed Katie to the bathroom, undressed her, and got in the shower with her. According to Katie, Arnold said, "[I]f I was this terrible person that you make me out to be, then I could take you right now." After they were finished showering, Katie told the children that she was going to make them dinner, but Arnold told the children to get in the car so he could take them out to eat. Weighing her options, Katie let Arnold leave with the children so she could use an emergency cell phone hidden in her son's room to dial 9-1-1.

T.J. Rhudy, who was the supervisor for the Waco and McClennan County emergency services dispatch, answered the emergency call. Katie reported:

> My husband has been drinking. He's pulled me and drug me around the house, pushed me into the tub . . . . He took me outside to the garage. He tied wire around my neck and choked me with it until I passed out. He did end up walking off and I was able to get out of it. And now he's taken my three kids in the car to go take them to get something to eat because he thinks that I'm okay and I'm not going to do anything. So he's driving and he's been drinking and he's got my kids in the car.

During the call, Katie told Rhudy that she thought Arnold was going to kill her. She added, "He's had a lot to drink."

Rebecca Mabry, a deputy with the McLennan County Sheriff's Office, arrived at the Arnold's home to assist Katie. Mabry immediately noticed marks on Katie's neck, bruising on her feet, carpet burns on her back, and a one-inch cut on her forehead. In detail, Katie explained the assault to Mabry, who testified that Katie's injuries were consistent with her statement. According to Mabry, Katie also told her "[t]hat she was seconds away from death."

4

In accordance with the State's indictment, the trial court charged the jury on the aggravated kidnapping count in the following manner:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 16th day of November, 2012, in McLennan County, Texas, the Defendant, Jay Warren Arnold, did then and there, with the intent to facilitate the commission of a felony, to-wit: Driving While Intoxicated with a Child Passenger or to facilitate the flight after the attempt or commission of said felony and/or inflict bodily injury on Katie Arnold and/or terrorize Katie Arnold, intentionally and knowingly abduct Katie Arnold by restricting the movements of said Katie Arnold without her consent so as to interfere substantially with her liberty, by moving her from one place to another and/or confining her, with the intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found . . . .
>
> . . . .
>
> . . . then you will find the Defendant guilty of Aggravated Kidnapping, as charged in Count II of the indictment.

The jury found Arnold guilty on this count and the family violence aggravated assault count.

## II.    Analysis of Arnold's Points of Error on Appeal

### A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

5

## B.     Procedural History

During a pretrial hearing, Arnold explained to the trial court that he had Crohn's disease and Hashimoto's syndrome and that he intended to employ a strategy arguing that his medical problems caused his cognitive impairment on the date of the offense, rather than voluntary intoxication. He also requested that he be allowed to introduce evidence of his medical condition because "it would be relevant to bias, motive, [and] his state of mind." He continued, "[W]e expect it will be part of our defense that part of the reason she made some of these claims is because she was fed up with his medical problems, [and] that she wanted to get rid of him."

During his opening statement, Arnold told the jury that his health problems, which caused cognitive impairment, "continued to be a strain and a tension in [his] relationship" with Katie, that she had already planned to divorce him, and that she was exaggerating and making up allegations because she wanted custody of the children. Arnold further stated that Katie's claims that he had been drinking all day were false.[2]

The jury then heard testimony from Rhudy and Mabry and listened to the 9-1-1 call, which provided evidence of Arnold's assault on Katie and his level of intoxication when he drove away with the children. During Mabry's cross-examination, Arnold elicited testimony that Mabry would

---

[2]He further argued:
> You're going to hear evidence from the police that no field sobriety tests were conducted in this cause, that normally when someone is arrested for driving while intoxicated that the police would do the eye test, they would do the walk-the-line test where someone is asked to walk the line and they would ask the person to hold one leg up. They didn't even try to conduct those tests in this case. . . . You're not going to get that because the police didn't even think it was important enough to get it.

These statements drew an objection from counsel, who characterized the statement as an argument. The trial court sustained the objection and instructed the jury to disregard the statements.

conduct field-sobriety tests if she suspected someone of driving while intoxicated (DWI), as long as the suspect was cooperative. She also said that she would try to obtain either a blood or breath sample.

The State's next witness was Jose Orozco, a sergeant with the Hillsboro Police Department and the officer who detained Arnold in Hillsboro until McLenann County Police arrived to arrest him. Before Orozco took the stand, Arnold, who was aware that the State would attempt to introduce the recording of his arrest, objected to its introduction on the ground that it was irrelevant "under [Rule] 403." In response, the State argued that the recording was relevant because intoxication was an issue in the case and that the recording demonstrated both that Arnold was intoxicated and that he was driving while intoxicated with children in the car. The trial court initially sustained the objection because it had not heard any testimony from Orozco.

When Orozco took the stand, he testified that he spotted the vehicle Arnold had been driving parked in a Braum's parking lot and made contact with Arnold, who was still seated in the vehicle with the children. Orozco detained Arnold for a little over an hour until McLennan County deputies arrived on the scene. He testified, "From the moment that . . . we approached him, we detected a smell of alcoholic beverage coming from his person or the vehicle. Also, the way he was talking was a slurred speech, an argument the whole time we were with him." Without objection, Orozco made clear to the jury that Arnold was intoxicated, uncooperative, and belligerent. Orozco also testified that despite his instructions, Arnold would not get inside the patrol car, even after officers attempted to push him into it.

7

When the State offered the recording of the detention, Arnold objected on the bases that it was irrelevant and inadmissible under Rule 403 of the Rules of Evidence. The trial court overruled Arnold's objections, and the recording was admitted and played for the jury.

**C.    The Trial Court Did Not Abuse Its Discretion in Overruling Arnold's Relevance Objection**

In his first point of error on appeal, Arnold argues that the trial court erred in overruling his relevance objection because his "conduct during detention [did] not make it more or less probable that he kidnapped and assaulted Katie." However, Arnold's conduct during detention was directly relevant to a main issue in the case.

Kidnapping becomes aggravated when a person "abducts another person with the intent to: . . . facilitate the commission of a felony." TEX. PENAL CODE ANN. § 20.04(a)(3) (West 2011). The State alleged, among other manners and means, that Arnold committed aggravated kidnapping by abducting Katie with the intent to facilitate the felony offense of driving while intoxicated with a child passenger. Arnold's uncooperative, belligerent conduct and manner of speech during the detention made it more probable that he committed the kidnapping to facilitate the commission of driving while intoxicated with a child passenger, a felony. Simply put, his conduct during detention was relevant since it spoke directly to a finding that the jury was asked to make.

Moreover, even assuming that the video recording was not directly relevant as proof of intoxication, "[e]vidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). "A party opens the door by leaving a false impression with the jury that invites the other side to respond." *Id.* During opening statements, Arnold argued to the jury that Katie's allegations were

8

fabricated. He told the jury that his actions could be explained by his medical conditions and that Katie was lying about his intoxication because she wanted to obtain custody of the children during their pending divorce.[3] Such an opening statement "opens the door to the admission of extraneous-offense evidence . . . to rebut the defensive theory presented in the defense opening statement." *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Therefore, the recording was also relevant to rebut Arnold's defensive theory that he was not intoxicated by alcohol and his accusation of fabrication.

We cannot say that the trial court abused its discretion in concluding that the video recording of Arnold's detention constituted relevant evidence. Accordingly, we overrule Arnold's first point of error.

### D. The Trial Court Did Not Abuse Its Discretion in Overruling Arnold's Rule 403 Objection

In his second point of error, Arnold argues that the recording was unfairly prejudicial because it showed him "acting belligerently and disobeying, threatening, taunting and cursing at the officers." We disagree.

#### 1. Standard of Review

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R.

---

[3]He also questioned Mabry about field-sobriety testing and was prepared to argue that intoxication by alcohol could not be established in the absence of such testing.

EVID. 403. In determining whether the trial court abused its discretion in admitting evidence over

a Rule 403 objection, we consider the following factors:

> "(1) the inherent probative force of the proffered item of evidence along with (2) the
> proponent's need for that evidence against (3) any tendency of the evidence to
> suggest decision on an improper basis, (4) any tendency of the evidence to confuse
> or distract the jury from the main issues, (5) any tendency of the evidence to be
> given undue weight by a jury that has not been equipped to evaluate the probative
> force of the evidence, and (6) the likelihood that presentation of the evidence will
> consume an inordinate amount of time or merely repeat evidence already admitted."

*Smith v. State*, 424 S.W.3d 588, 594–95 (Tex. App.—Texarkana 2013, no pet.) (quoting

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). When considering these

factors, we are to keep in mind that

> Rule 403's "use of the word 'may' reflects the draftsman's intent 'that the trial
> judge be given a very substantial discretion in "balancing" probative value on the
> one hand and "unfair prejudice" on the other, and that he should not be reversed
> simply because an appellate court believes that it would have decided the matter
> otherwise.'"

*Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006) (quoting *Manning v. State*, 114

S.W.3d 922, 926 (Tex. Crim. App. 2003)).

### 2. Analysis

In this case, Arnold argues that the probative value of the recording was substantially

outweighed by a danger that the jury would base its decision on the belligerent nature Arnold

demonstrated on the recording. As for the first factor, Arnold argues that the video recording was

not probative of whether he kidnapped and assaulted Katie. Arnold's argument ignores the fact

that the jury could consider Katie's kidnapping to be aggravated if the evidence established that

the kidnapping was committed with the intent to facilitate driving while intoxicated with a child

passenger. Because the recording demonstrated that Arnold was intoxicated immediately after he had driven himself and his children to the restaurant and, therefore, was evidence that he was driving while intoxicated with child passengers, it was directly probative of the aggravating element of the State's kidnapping case.

As for the second factor, Arnold argues that because "the State had ample evidence," it had no need for the recording. We disagree. In addition to the video recording containing evidence of Arnold's intoxication, it also assisted the State with rebutting Arnold's argument (1) that Katie was lying about his intoxication and (2) that he was acting in the manner shown on the recording due to his medical condition. Although the evidence involved the same topic as the witness' testimony, it was the only evidence which allowed the jury to witness Arnold's demeanor in "real time." Consequently, the State needed the video in addition to the witness testimony.

Arnold asserts that the third, fourth, and fifth factors weighed against admitting the recording because it encouraged the jury to decide the case on an improper basis and confused the jury. Specifically, he asserts that "[a]lthough Appellant's behavior during detention had nothing to do with the alleged assault and kidnapping of Katie, the jury hearing Appellant cursing at, threatening, and taunting law enforcement undoubtedly left a strong and negative impression on the jury." However, as noted above, the recorded depiction of his treatment of the officers tended to corroborate the witnesses' testimony regarding his previous actions towards Katie. Also, the recording allowed the jury to assess his demeanor at the relevant time period in order to determine the veracity of his testimony that Katie was lying about his alcohol consumption and that his actions resulted from a medical condition rather than alcohol. Therefore, the video did not have a

11

tendency to confuse the jury or encourage them to decide the case solely based on his conduct towards the officers, but instead assisted them in weighing and evaluating the believability of the witness testimony.

Finally, the recording was also short in duration, and its presentation did not consume an inordinate amount of time. And, because the recording was the only "real time" evidence of Arnold's demeanor, it did not repeat evidence which had already been admitted. Therefore, the sixth factor is neutral.

In summary, the probative force of the audio/video recording and the State's need for it both weigh in favor of admission, and the remaining factors are neutral. Consequently, we cannot conclude that the trial court abused its discretion in determining that the probative value of the video recording was not substantially outweighed by the danger of unfair prejudice. We overrule Arnold's second point of error.

## III.    Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     October 20, 2016
Date Decided:       November 29, 2016

Do Not Publish

12