

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00826-CR

Richard **BRITTAIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 589944
Honorable Rosie S. Gonzalez, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Beth Watkins, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: June 30, 2021

AFFIRMED

A jury convicted Richard Brittain of assault causing bodily injury. On appeal, Brittain asserts nine issues gathered into seven groups: (1) denial of motion for new trial alleging ineffective assistance of counsel; (2) judicial bias; (3) violation of the Confrontation Clause; (4) jury charge error; (5) legal insufficiency of the evidence; (6) failure to declare a mistrial after the State's violation of the trial court's order on Brittain's motion in limine; and (7) admission of the responding officer's opinion on whether Brittain acted in self-defense. We affirm.

## BACKGROUND

On August 29, 2018, at approximately 5 a.m., a complainant, Chelsea Criss, called 911 and requested police and EMS assistance for a reported domestic violence incident at Brittain's house. Audibly crying, Criss reported that Brittain "beat" her, "choked" her, "threw [her] head against glass," and that Brittain owned weapons (although none were used in the incident). She further offered Brittain's address, where he was presently located, and explained that she was calling from a neighbor's house because Brittain had taken her cellular phone.

San Antonio Police Department ("SAPD") officer Brandon Liles was assigned to the case. Captured on his body camera and later played to the jury, Liles can be seen responding within a few minutes of the 911 call. Liles had learned from a key card that an unknown complainant, Criss, had been assaulted by Brittain and that Brittain was in possession of a firearm in the house, though he had not threatened Criss with it.[1] A subsequent key card (generated shortly after from a second 911 caller) stated Criss had been assaulted by her boyfriend and Criss was bleeding from her ear and had lost consciousness.

As Liles approached Brittain's residence, a bystander approached him to report that the bystander saw an unknown figure flee from Brittain's house to another residence across the street. After this discussion, Liles knocked on Brittain's front door, and Brittain exited the residence and closed the door behind him. For officer safety, Liles handcuffed Brittain during Liles's investigatory questioning. Brittain answered Liles's questions. In pertinent part, Brittain reported (1) he and Criss, an ex-girlfriend, had resumed their relationship when she moved back in with him the night of August 28; (2) they were in a volatile relationship; (3) Criss was a stripper who

---

[1] A key card is a memorialized recording of details gathered by an operator during a 911 call. The 911 operator relays information electronically to a SAPD key card—information formatted to appear on laptops mounted inside SAPD police vehicles.

had substance abuse issues; (4) a physical altercation had occurred; (5) Brittain acted in self-defense by pushing Criss away after she first punched him in the nose; (6) Criss was "large" and "big-statured" with "shoulders like Rhonda Rousey"; and (7) Criss had fled Brittain's home and he did not know where she was.

A second officer reached the scene minutes after Liles's arrival. The second officer entered Brittain's house to physically investigate the upstairs bedroom where the incident occurred. Inside the bedroom, the second officer found two sets of floor-length, mirrored sliding-closet doors. The mirror on one door was shattered down its length, and the door was off its hinges.

After speaking with the bystander and Brittain, Liles located Criss at a neighbor's house. Liles observed Criss was bleeding from inside her ear, one of her fingernails was broken and bleeding, and the back of her head near the neck was red. Her injuries were photographed and later shown to the jury. Liles later testified that Criss appeared upset and scared as he spoke with her. He also observed Brittain had greatly exaggerated Criss's size—she was approximately 5'7" and 130 pounds.

As she received EMS assistance, Criss reported that Brittain hit her at least twice on the side of the head and twice threw her into a mirror. After observing the disparity in the levels of injury and physical size, interviewing both Brittain and Criss, and in light of the broken mirror, Liles concluded that the complainant was the first to strike Brittain, but Brittain's subsequent actions exceeded any potential self-defense claims. Liles arrested Brittain; Criss was transported to a nearby hospital for treatment.

Brittain was charged with assault causing bodily injury and interference with emergency request for assistance. The interference case was dismissed, and on September 23, 2019, the trial on the assault case began. Before jury selection, Brittain's trial counsel discovered that Criss would not be appearing at trial to testify. Having first discovered this on the day of trial, Brittain's trial

counsel notified the trial court that he intended to move to suppress evidence pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). The trial court indicated that it would not entertain a *Crawford* motion because it was its courtroom procedure to hear pre-trial motions, including *Crawford* motions, exclusively before the start of a trial.

Notwithstanding the trial court's stated policy of not hearing *Crawford* motions on the day of trial, during extended discussions, the trial court, in fact, heard what Brittain's trial counsel described as "*Crawford*-like arguments" and ruled, pursuant to Brittain's motion in limine, that the State must redact the reference to Criss's phone being taken by Brittain from the 911 call, and the 911 call could only be played until Criss confirmed her safety. Subject to these exceptions, the trial court determined that Criss's 911 call was admissible. The trial court then proceeded to jury selection, but due to a mistake in the seating of jurors, the trial court declared a mistrial.

The following morning, the parties seated a new panel, conducted a second jury selection, and empaneled the jury. During the State's case-in-chief, the State called Liles and a custodian of records to admit the 911 call. While playing the 911 call, the State violated the motion in limine when it played the portion of the call where Criss stated that Brittain had taken her phone. Brittain's trial counsel moved for a mistrial, which was denied. Brittain was the only witness to testify in his defense. The primary issue at trial was the reasonableness of Brittain's belief that the force he used was immediately necessary to protect himself. The jury disbelieved his assertion of self-defense and convicted Brittain of assault. The trial court assessed punishment at one year confinement, probated for eighteen months. This appeal followed.

### DENIAL OF MOTION FOR NEW TRIAL ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL

After conviction and sentencing, Brittain filed a motion for new trial predicated on alleged ineffective assistance of trial counsel. In his first two issues, Brittain asserts that the trial court erred in (1) denying his motion for new trial and (2) doing so without holding a hearing.

A defendant is entitled to effective assistance of counsel under the United States Constitution and the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. To establish ineffective assistance of counsel, the appellant must show: (1) trial counsel's assistance fell below an objective professional standard of reasonableness and (2) counsel's actions prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Concisely outlined by this court, a defendant must demonstrate deficient performance and prejudice. *Vega v. State*, 610 S.W.3d 79, 82 (Tex. App.— San Antonio 2020, no pet.). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id.*

"To establish deficient performance, an appellant must show counsel's assistance 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Thompson*, 9 S.W.3d at 812). "An appellant must overcome the 'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Id.* "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id.* "If no reasonable trial strategy can justify counsel's choices or conduct, performance necessarily falls below an objective standard of reasonableness." *Id.* "However, few cases demonstrate such deficiency on direct appeal because the record is unlikely to include any explanation by trial counsel, and 'we can [frequently] conceive of potential reasonable trial strategies that counsel could have been pursuing.'" *Id.* at 82–83.

"Once an appellant establishes deficient performance, the appellant must then establish prejudice." *Id.* at 83. An appellant "must show a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### A. Motion for New Trial

In his first issue, Brittain asserts the trial court abused its discretion in denying his motion for new trial. A motion for new trial must be supported by an affidavit that specifically sets out the factual basis for the claim. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). When ineffective assistance of counsel is raised in a motion for new trial, "a defendant must allege sufficient facts from which a *trial court* could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith v. State*, 286 S.W.3d 333, 340–41 (Tex. Crim. App. 2009) (emphasis added). The decision on a motion for new trial rests within the sound discretion of the trial court. *State v. Gonzales*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993).

Reversal is only justified when the trial court's decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Smith*, 286 S.W.3d at 339. Thus, appellate review is limited to a determination of whether the trial court's decision was arbitrary or unreasonable. *Gonzales*, 855 S.W.2d at 695 n.4. Under this deferential standard of review, appellate courts view the evidence in the light most favorable to the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).

Brittain's motion for new trial asserts his trial counsel performed deficiently by failing to investigate favorable evidence admissible at trial. Specifically, Brittain claims that trial counsel should have interviewed Brittain's adult children who were present in the house the night of August 28 and at the time of the incident. According to the motion and attached affidavits, Brittain's daughter could have testified to Criss's intoxication the night of August 28 and Criss's

reputation for being aggressive and violent when intoxicated, as well as to the details of a prior incident in which Criss attacked Brittain resulting in Criss taking a "huge chunk out of Brittain's nose" and causing him a black eye. Her affidavit also reflects she did not see or hear anything after going to bed the night of August 28. Brittain's son provided a substantially similar affidavit. A third affidavit, executed by a friend of Brittain's children who was not present the night before or at the time of the incident, evidenced Criss's reputation as violent and frequently intoxicated. According to Brittain, Criss's reputation for violence was admissible to show that she was the first aggressor, and the witnesses' descriptions of Criss's abuse of alcohol and drugs was "germane to her character for violence." Brittain also asserts the children and third witness would have provided evidence of Brittain's peaceable character and absence of criminal history.

It was undisputed at trial that Criss was the first aggressor and she abused drugs. The principal issue at trial was whether Brittain reasonably believed the force he used was immediately necessary to protect himself against Criss's use of unlawful force. The record reflects Brittain's trial counsel represented to the court that Brittain's children were at home at the time of the incident but that they did not witness the incident. The affidavits confirm the veracity of trial counsel's representation. Although the affidavits presented new evidence of an isolated prior incident of violence where Criss was the aggressor, along with information about Brittain's peaceable character, Brittain is unable to show that there is a reasonable probability the result would have been different, therefore not satisfying the second prong under *Strickland*. For these reasons, even if the affidavits presented some new information that was not contained in the record, the trial court could reasonably conclude that trial counsel did not fail to act as a reasonably competent

attorney.[2] We cannot conclude that the trial court abused its discretion in denying Brittain's motion for new trial. We overrule Brittain's first issue.

### B. A motion for new trial hearing was not required.

In his second issue, Brittain asserts that the trial court abused its discretion in declining to hold a hearing on Brittain's motion for new trial. The right to a hearing on a motion for new trial is not absolute. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). "[A] hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Id.* at 816 (emphasis in original). "Conversely, a trial judge abuses [its] discretion in failing to hold a hearing on a motion for new trial when that motion raises matters which are not determinable from the record." *Smith*, 286 S.W.3d at 338.

As a prerequisite for a hearing, motions for new trial must be supported by an affidavit of either the accused or someone else specifically showing the truth of the grounds asserted. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (citing *Reyes*, 849 S.W.2d at 816). A defendant requesting a new trial needs to "assert reasonable grounds for relief which are not determinable from the record in order to be entitled to a hearing." *Id*. "[I]f the defendant's motion and affidavit are sufficient, a hearing on the motion is mandatory." *Jordan*, 883 S.W.2d at 665.

In the context of ineffective assistance claims, entitlement to a hearing requires a showing that there is a *reasonable* likelihood that the outcome of his trial would have been different. *Smith*, 286 S.W.3d at 340–41. For the reasons discussed above, the affidavits attached to Brittain's motion for new trial did not assert the existence of reasonable grounds for relief. *Id.* at 335 ("We now hold that for the movant to demonstrate reasonable grounds for relief when alleging ineffective

---

[2] The record discloses trial counsel sought to ensure Brittain's children could remain in the gallery after the State invoked the Rule. *See*, *e.g.*, *Vega*, 610 S.W.3d at 82 (citing *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) ("Frequently, we can conceive potential reasonable trial strategies that counsel could have been pursuing. When that is the case, we simply cannot conclude that counsel has performed deficiently.")).

assistance of counsel, he must establish both *Strickland* prongs, which includes showing a reasonable probability that but for counsel's deficiency (if any) a different result would have occurred.").

Liles testified upon his arrival at the scene he received information that Criss had fled Brittain's home and was at a neighbor's house. He observed Criss's injuries as bleeding from inside of her ear, one of her fingernails being broken enough to bleed, and general redness around the back of her head, toward her neck. Liles further testified that the physical evidence, including the broken floor-length mirrored sliding-closet door at the scene supported Criss's version of events that she was thrown into said mirrored-door more than once. As she received EMS assistance, Criss stated that she was hit at least twice on the side of the head and thrown into a mirror. Having heard all of the evidence that corroborated Liles's conclusion, the court could have disbelieved Brittain's testimony that he only pushed Criss once in self-defense or found the force he used was unreasonable under the circumstances.

Although the affidavits outlined new information, given (1) the evidence presented in the case and (2) Brittain's own testimony, "[w]e are not persuaded that 'reasonable grounds exist' for believing that remanding this case to the trial court . . . could result in the granting of appellant's motion for new trial or any other relief to appellant." *Whitaker v. State*, 286 S.W.3d 355, 366 (Tex. Crim. App. 2009). Thus, Brittain failed to meet the threshold requirement to be entitled to a hearing. *See Jordan*, 883 S.W.2d at 665. We cannot conclude the trial court abused its discretion in declining to hold a hearing on Brittain's motion for new trial. We overrule Brittain's second issue.

**JUDICIAL BIAS**

In his third issue, Brittain asserts the trial court's conduct evidenced apparent bias that violated his right to a fair trial. Brittain's third issue is divisible into two, discrete subparts: unconstitutional bias and comments on the weight of the evidence. We take each subpart in turn.

**A. Brittain cannot show clear unconstitutional bias.**

Both the United States Constitution and the Texas Constitution prohibit an accused from being deprived of life, liberty, or property, without the due process of law. U.S. CONST. amend. V, XIV; TEX. CONST. art. I, § 19. In the context of a trial, "[d]ue process requires a neutral and detached body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

Judicial bias may be presumptive or actual. Presumptive bias exists where a judge's interest in the outcome of a case objectively "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009); *see also* TEX. CONST. art. V, § 11 (prohibiting judges from sitting in cases where the judge is interested, related to a party, or where the judge acted as counsel in the case). Actual bias exists where a judge possesses "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Litekey v. United States*, 510 U.S. 540, 555 (1994); *Abdygapparova v. State*, 243 S.W.3d 191, 210 (Tex. App.—San Antonio 2007, pet. ref'd). Actual bias may arise where the judge improperly relies on an "extrajudicial source" or "evidence[s] the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Litekey*, 510 U.S. at 555.

"Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Id.* at 551; *Abdygapparova*, 243 S.W.3d at 198. "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Litekey*, 510 U.S. at 555. This includes

"expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555–56. Ordinary efforts at courtroom administration—even stern and short-tempered—remain immune. *Id.*

At issue in this case is Brittain's claim of actual bias. In support of his claim, Brittain quotes various statements made by the trial court. A review of the record demonstrates that the trial court's statements were almost entirely made outside the presence of the jury and were explainable as courtroom administration efforts. *See id.* Even the harshest statement made by the trial court— what it perceived as the criminal defense bar's purported dilatory trial strategy in asserting *Crawford* motions on the day of trial—was made before voir dire, outside the presence of the jury, and directly related to pretrial administration under its courtroom rules. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) ("[A] trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence.").

Although Brittain alleges numerous instances of the trial court acting sharply towards defense counsel, the record reflects that the trial court acted in the same manner towards the State. For example, the trial court refused to allow the State to recall Liles in rebuttal because the State could not secure his attendance on the evening of trial, and the trial court refused to allow the case to continue to a second day. In doing so, the trial court stated that the State "really need[s] to prepare better." These comments, made to both sides, reflect the trial court's overriding concern was to efficiently administrate justice in a one-day jury trial. *See Litekey*, 510 U.S. at 555. We cannot say that Brittain has clearly shown actual bias. Absent a clear showing of actual bias, we must presume the trial court's actions to have been correct. *Litekey*, 510 U.S. at 551; *Abdygapparova*, 243 S.W.3d at 198. To the extent Brittain's third issue relies on a claim of unconstitutional bias, we overrule it.

### B. Brittain did not preserve complaint over an alleged improper comment on the weight of the evidence.

In addition to constitutional protections, Texas law prohibits a trial court from commenting on the weight of evidence. TEX. CODE CRIM. PROC. art. 38.05. Because jurors are prone to seize upon any conduct or language of the trial court which they may interpret as shedding light on its view of the weight of the evidence or the merits of the issues involved, a trial court is required to be alert in its communications with the jury—not only to avoid impressing them with any view that it has, but to avoid in its manner and speech things that they may so interpret. *Abdygapparova*, 243 S.W.3d at 209–10 (citing *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)).

"To constitute reversible error under Article 38.05, the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights." *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). In order to be reasonably calculated to benefit the State or prejudice the defendant's rights, the comments must "[rise] to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper*, 61 S.W.3d at 421. "It is not improper for a trial judge to interject in order to correct a misstatement or misrepresentation of previously admitted testimony." *Id.* "Further, a trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence." *Id.* "If raised as a freestanding statutory complaint, error under Article 38.05 is subject to non-constitutional harm analysis." *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017).

Brittain asserts as a freestanding statutory claim that the trial court's instruction to the prosecution to replay Liles's bodycam video after an initial playthrough during Liles's questioning constituted an impermissible comment on the weight of the evidence. During the initial playthrough, the State repeatedly interrupted the video to question the witness. The record reflects that everyone—including Brittain and Brittain's trial counsel—had trouble hearing the bodycam

audio. The video exhibit in the record confirms that speakers other than Liles (who wore the body camera) are exceedingly difficult to hear.

The trial court's instruction to replay the bodycam video came in response to Brittain's trial counsel's complaint about the State's questioning during the initial playthrough and suggestion that the trial court should "let the thing play." Moreover, the trial court asked Brittain's trial counsel whether he objected to the trial court replaying the video in its entirety without interruption, and he did not object. *Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986) ("[S]ince appellant made no objection at the time the statement [comment on the evidence] was made, nothing was presented for review."). To the extent Brittain's third issue relies on an allegation the trial court improperly commented on the evidence, nothing is presented for our review.

CONFRONTATION CLAUSE

In his fourth and fifth issues, Brittain asserts violations of his right to confrontation. Specifically, Brittain asserts the trial court erred in (1) denying Brittain a "complete" hearing on his *Crawford* motion and (2) admitting Criss's 911 call without her appearing to testify.

**A. The trial court heard Brittain's *Crawford* motion.**

Trial courts have discretion to conduct pretrial hearings on preliminary matters, including the admissibility of evidence. *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016); TEX. CODE CRIM. PROC. art. 28.01. Such discretion permits trial courts, upon proper objection, to elect to determine the admissibility of the challenged evidence during the trial on the merits. *Yanez v. State*, 199 S.W.3d 293, 300–01 (Tex. App.—Corpus Christi 2006, pet. ref'd). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Hill*, 499 S.W.3d at 865.

Brittain asserts the trial court abused its discretion by failing to give him a "complete" hearing on his *Crawford* motion. In his briefing, Brittain discusses at length the problematic nature of the trial court's courtroom policy of only hearing *Crawford* motions before the day of trial. One such issue arose here, where Brittain did not learn until the first day of trial that Criss would not appear to testify.

Despite the trial court indicating there would not be a hearing, the trial court allowed Brittain's trial counsel to argue each point he intended to make under *Crawford*. After presenting argument, Brittain's trial counsel confirmed as much: "That was really the extent of what the pretrial hearing would have been. So thank you for the opportunity." Under this record, we cannot say the trial court acted arbitrarily or without reference to guiding principles. The trial court did not abuse its discretion. We overrule Brittain's fourth issue.

**B. Brittain did not preserve right to confrontation issues for appeal.**

Before we reach the merits, we address the State's assertion that Brittain did not properly preserve right to confrontation issues for appeal. The State asserts Brittain waived the right to confrontation by failing to object during the trial each time the State offered potentially offending evidence. We agree.

It is not disputed that Brittain objected to the 911 call through a pretrial motion in limine; however, a pretrial objection on right to confrontation issues, standing alone, is insufficient to preserve the issue for our review. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004). To avoid waiver, Brittain was required to object to the admission of the evidence at trial when the State sought to introduce it. He did not do so. We hold that Brittain's fifth issue is not preserved for our review on appeal. Even if we found the issue properly preserved, as next discussed, we would find no error because the 911 call only contained non-testimonial statements.

**C. The 911 call played to the jury only contained non-testimonial statements.**

In *Crawford*, the Supreme Court holds that testimonial witness statements are admissible only if (1) the person who gave the statement is unavailable and (2) the accused had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68. Although it did not explicitly define the term, the Court delineated the parameters of "testimonial," applying it "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id. Crawford* thus holds that a "core class of 'testimonial' statements" includes: (1) ex parte in-court testimony, (2) affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51–52. The issue in this case is whether the portions of Criss's 911 call played for the jury fall within the class of statements defined as testimonial under the last category.

We review de novo a trial court's constitutional rulings, including whether a statement is testimonial or non-testimonial in nature. *Watson v. State*, 421 S.W.3d 186, 195 (Tex. App.—San Antonio 2013, pet. ref'd) (citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999) and *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006)). Whether a statement is testimonial or non-testimonial is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall*, 184 S.W.3d at 742. We consider "the formal nature of the interaction, the intent of the declarant, or some combination of the two factors." *Watson*, 421 S.W.3d at 196.

We begin our analysis by reviewing the statements heard by the jury:

> **OPERATOR** San Antonio 911, this is Ashley. Police, fire, or EMS?
>
> **CRISS** Hi ma'am, can I get an EMS and can I get, um, police officers. Um, at --
>
> **OPERATOR** You need police and EMS?

**CRISS** Police and EMS, yes ma'am. I just got beat. The address is [redacted].

**OPERATOR** Okay. That's the house?

**CRISS** That is the house. I'm at the neighbors across the street. There -- There's blood everywhere. And it was my ex-boyfriend who just beat me right now.[3]

**OPERATOR** Is he still there?

**CRISS** He's at his house. Yes ma'am. He took my phone. That's why I had to come to a neighbor.

At the time Criss made these statements, the emergency was ongoing: Criss reported that she "*just* got beat." A second 911 caller reported Criss lost consciousness. Shortly thereafter, Liles observed Criss "bleeding from inside of her ear."

An objectively reasonable declarant would believe they are answering the operator's questions to receive assistance, not to be used as evidence in a hypothetical future trial. *Wall*, 184 S.W.3d at 742. Initiated by Criss, the 911 call was an informal interaction in which "frantic answers were provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *See Davis v. Washington*, 547 U.S. 813, 814 (2006). Criss's answers were clearly intended to elicit police and EMS support for an ongoing emergency. *See Michigan v. Bryant*, 562 U.S. 344, 366 (2011); *Watson*, 421 S.W.3d at 196.

Other courts presented with similar 911 calls have also found the statements to be non-testimonial. *See Rodgers v. State*, 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.—Beaumont Aug. 4, 2010, no pet.) (holding declarant's 911 call involving hit-and-run ongoing emergency was non-testimonial); *Reyes v. State*, No. 04-09-00210-CR, 2010 WL 956140 (Tex. App.—San Antonio Mar. 17, 2010, no pet.) (holding child's 911 call requesting assistance because

---

[3] The exhibit provided to the jury for deliberation ended at this point in the transcript.

father "beat my mom" was non-testimonial); *Dixon v. State*, 244 S.W.3d 472, 484–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding distressed 911 caller's report that her boyfriend "just beat [her] up" after she fled to her car was non-testimonial); *Santacruz v. State*, 237 S.W.3d 822, 828–29 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding wife's 911 call after husband hit her and fled scene was non-testimonial); *Cook v. State*, 199 S.W.3d 495, 496–97 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding excited observer's 911 call reporting potential crime in progress after defendant gestured obscenely and threw bottle at complainant's truck was non-testimonial).

In short, the statements heard and considered by the jury were non-testimonial. *See Bryant*, 562 U.S. at 366; *Davis*, 547 U.S. at 814; *Wall*, 184 S.W.3d at 742. Because the statements were non-testimonial, even if the issue were preserved, we would find no error with their admission.

### JURY CHARGE

In his sixth issue, Brittain asserts the trial court's jury charge erroneously included two instructions unsupported by the evidence presented at trial. Before closing arguments, the trial court provided a proposed charge to the attorneys for Brittain and the State that included, in relevant part, instructions on provocation and the duty to retreat. Both Brittain and the State accepted the trial court's proposed charge without objection.

Based on the evidence presented at trial, the State admits that inclusion of these two instructions was erroneous; however, Brittain failed to preserve error by timely objecting to the trial court's proposed charge. As a result, to constitute reversible error, the unpreserved charge errors must have resulted in "egregious harm" affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *see also* TEX. CODE CRIM. PROC. art. 36.19. "Reversal is not required unless the error is so egregious that the defendant was denied a fair and impartial trial."

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc). To assess whether charge error is egregiously harmful, courts consider (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole. *Gelinas v. State*, 398 S.W.3d 703, 705 (Tex. Crim. App. 2013).

Reviewing the totality of the record, neither the provocation instruction nor the duty to retreat instruction rose to the level of egregious harm. The charge was relatively simple. As a matter of form, the offending instructions were not set apart or emphasized. It was uncontested that Criss made the first strike to Brittain's face and it was undisputed that Brittain had a right to be in his own home. Neither the provocation instruction nor duty to retreat instruction were contextualized by any evidence presented nor discussed in closing argument. Closing arguments focused on the primary issue of contention in the trial court: the reasonableness of Brittain's physical response. Having found no egregious error, we overrule Brittain's sixth issue.

### LEGAL SUFFICIENCY OF EVIDENCE

In his seventh issue, Brittain asserts the evidence was legally insufficient to support his conviction. In a sufficiency claim, our role is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The essential elements of the offense are defined by the hypothetically correct jury charge for the case. *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013). Conflicting inferences are resolved in favor of the verdict. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Direct and circumstantial

evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The primary issue at trial was the reasonableness of Brittain's belief that the force he used was immediately necessary to protect himself against Criss's use of unlawful force. A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31. Brittain argues the evidence establishes only that Criss punched him, and in response he either pushed or punched Criss. According to Brittain, the evidence is legally insufficient because the State only took issue with the degree of force he used, and the degree of force used—a push or return strike—was not unreasonable.

Brittain's argument implicitly rests on the invalid assumption that jurors could only act rationally by concluding that Brittain's trial testimony was true because Criss did not testify at trial. But the jury was entitled to disbelieve Brittain's version at trial for any number of reasons. Brittain's testimony varied in material respects from Brittain's description of events to Liles on the morning of the incident. The jury could have rationally believed, based on a review of the photograph of Criss's bleeding ear, that Brittain did more than "shove" Criss—especially in light of the recording of Criss in the ambulance in which she stated Brittain had struck her twice on the side of the head. The jury could have rationally believed, based on a review of photographs of a broken door and shattered mirror that Brittain did more than "shove" Criss. There is sufficient evidence from which a rational jury could have concluded Brittain's force far exceeded what he claimed; consequently, a rational jury could have concluded Brittain did not *reasonably* believe the force he used was immediately necessary to protect himself against Criss's use of unlawful force. We overrule Brittain's seventh issue.

## VIOLATION OF MOTION IN LIMINE

In his eighth issue, Brittain asserts the trial court erred in denying his request for a mistrial after the State violated the motion in limine. The trial court granted the motion in limine prohibiting the State from playing a portion of the 911 call in which Criss stated, "He took my phone. That's why I had to come to a neighbor." The trial court's ruling was predicated on a previous dismissal of the separate offense of interference with emergency request for assistance. According to Brittain, the violative statement referenced an extraneous offense and, therefore, the trial court abused its discretion in denying his motion for mistrial.

### A. Brittain preserved error on the State's violation of the trial court's order.

We first address the State's contention that Brittain failed to preserve error by not asking for an instruction to disregard before moving for mistrial. "Generally a motion in limine will not preserve error to the admission of inadmissible evidence." *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972). When evidence is placed before the jury in violation of a motion in limine, an instruction to disregard is generally sufficient to cure error. *Barnes v. Univ. Fed. Credit Union*, No. 03-10-00147-CV, 2013 WL 1748788, at *12 (Tex. App.—Austin 2013, no pet.) (citing *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985)) (mem. op.). While preferred, the traditional procedure of objecting, requesting an instruction to disregard, and then moving for a mistrial is not essential to preserve error for appellate review. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). A request for an instruction to disregard is only necessary "when such an instruction could have had the effect desired by the requesting party." *Id.*

Had Brittain's trial counsel requested the trial court to instruct the jury to disregard the segment of the 911 audio in which Criss stated her phone was taken by Brittain, it would not "have had the effect desired by the requesting party"—rather, from trial counsel's perspective, it could have highlighted the existence of the dismissed extraneous offense. Moreover, Brittain satisfied

the essential requirement for preservation by making a timely, specific request for mistrial that was refused by the trial court. *See id.* Immediately after the bench conference discussing the State's violation, Brittain's counsel re-approached and concisely stated, "In light of the State violating the Court's motion in limine, we move for a mistrial." Accompanied with the trial court's denial, this was sufficient to preserve error. *See id.*

## B. The trial court did not abuse its discretion in denying mistrial.

The denial of a motion for mistrial is reviewed under the abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) (en banc); *Dossett v. State*, 216 S.W.3d 7, 31 (Tex. App.—San Antonio 2006, pet. ref'd). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Generally, a mistrial is only required when the improper evidence or testimony is "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Brittain nowhere identifies the exact offending statement that he complains over in his brief and instead obliquely concludes that a portion of the 911 call refers to an extraneous offense. Because we must examine the particular facts of the case to determine whether a given error necessitates a mistrial, we ascertain from the record that Brittain complains over the following statement from the 911 audio recording: "He took my phone. That's why I had to come to a neighbor." We examine three factors to determine whether the trial court abused its discretion in denying a motion for mistrial: (1) the severity of the misconduct (prejudicial effect); (2) curative

measures; and (3) the certainty of conviction absent the misconduct. *Hawkins*, 135 S.W.3d at 75; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

**First Factor: Severity of the Misconduct.** The State does not dispute that it mistakenly violated the motion in limine. But the State's error in playing the offending statement is not highly prejudicial. *See Ocon*, 284 S.W.3d at 884. As we have determined, the statement is non-testimonial in nature. Further, the statement, "He took my phone," does not obviously reference an extraneous offense. This is especially true given Criss's next sentence: "That's why I had to come to a neighbor." Absent an instruction to disregard that would highlight to the jury the existence of *some* issue with these two sentences, the statements facially appear to explain why Criss placed the call to 911 from a neighbor's house. Had the trial court denied Brittain's motion in limine and allowed this portion of the 911 call to be admitted into evidence, we do not believe that the trial court would have abused its discretion.

Moreover, the offending statements constitute relevant surrounding facts and circumstances of the charged offense. *See Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). That is, they were independently admissible as same-transaction contextual evidence to impart to the jury information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). Same-transaction contextual evidence "is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged." *Id.* at 535. To illustrate, there are many reasons why a domestic violence complainant may flee to a neighbors' house seeking assistance. One is to escape continuing violence. That was not the case here. Rather, Criss's explanation for why she placed a call from a neighbor's house potentially assisted Brittain in the mind of a jury by explaining that she did so because she needed a phone and not to avoid continued assault.

Even if we assume the statement was prejudicial, the level of prejudice does not rise to the level requiring a mistrial. Texas courts have approved far more prejudicial same-transactional contextual evidence without error. *See, e.g.*, *Nelson v. State*, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993) ("It would have been impracticable to avoid describing the charged offense without also describing the attempted capital murder of the second victim."); *Smith v. State*, 424 S.W.3d 588, 594 (Tex. App.—Texarkana 2013, no pet.) (holding that the extraneous rape of the murder victim's wife by the codefendant was admissible as contextual evidence against the defendant because it was "interwoven and related" to the murder of the husband). The first factor supports trial court's denial.

**Second Factor: The Measures Adopted to Cure the Error.** The second factor assumes the existence of error. While we find no error, we assume it for purposes of this analysis. Even before Brittain moved for mistrial, the trial court effectively sanctioned the State by excluding all portions of the 911 call that were not yet played. Under the trial court's order, the State was not able to play approximately two minutes of the 911 call that included admissible statements. Instead, the State was only allowed to play (and the jury only received) forty-one seconds of the 911 call. In other words, the trial court excluded nearly three-quarters of the 911 call originally proffered by the State. Additionally, redaction of the complained-over statement prior to submission ensured the jury did not have access during deliberations. Even assuming the existence of error, the trial court's remedial actions were sufficient to cure it. The second factor supports the trial court's denial.

**Third Factor: The Certainty of Conviction Absent the Erroneous Admission of Evidence.** Like the second factor, the third factor assumes the existence of error; thus, we again assume it for purposes of this analysis. Brittain's conviction remains certain had the jury not heard, "He took my phone. That's why I had to come to a neighbor." Not only because it is not

inflammatory or highly prejudicial but because it was never again mentioned to the jury during the trial. The State never referenced the extraneous offense in argument. It is simply not credible to say that the jury would have found Brittain not guilty if those two sentences were not uttered one time during trial. Our determination that the evidence was legally sufficient for Brittain's conviction also buttresses our conclusion that the third factor supports the trial court's denial.

The State's violation of the motion in limine is unfortunate. But the statement, "He took my phone. That's why I had to come to a neighbor," was not improper evidence calculated to inflame the passions of the jury. *See Hinojosa*, 4 S.W.3d at 253. Weighing all three factors, we cannot say the trial court abused its discretion in denying Brittain's motion for mistrial. *See Hawkins*, 135 S.W.3d at 75; *Mosley*, 983 S.W.2d at 259. We overrule Brittain's eighth issue.

### IMPROPER OFFICER TESTIMONY

In his ninth issue, Brittain asserts the trial court erred in admitting Liles's opinion regarding whether Brittain acted in self-defense because Liles's testimony was that of a nonexpert witness. This issue was not preserved for our review. As a prerequisite for appellate review, the record must show that trial counsel objected with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a). Brittain complains over the following exchange:

> **PROSECUTOR** So in your opinion, since you talked about your training on self-defense, after seeing the injury -- alleged injury on the Defendant, and after seeing personally the injury on the victim [Criss] bleeding from her ear, and after hearing about being slammed against the door and after seeing the slammed door, what is your opinion of self-defense?
>
> **DEFENSE** Objection, leading.
>
> **PROSECUTOR** I asked for his opinion on self-defense, Your Honor.
>
> **THE COURT** Overruled.

> **PROSECUTOR** What is your opinion on self-defense, if you can tell the jury?
>
> **LILES** As it pertains to this case, sir?
>
> **PROSECUTOR** Yes.
>
> **LILES** I don't believe what occurred was self-defense.

The trial court overruled Brittain's objection to the first question as "leading," and Brittain did not otherwise object. The State expressly sought Liles's opinion on self-defense, but Brittain did not object with sufficient specificity to make the trial court aware that Brittain complained over Liles offering his opinion. *See id.*; *Villarreal v. State*, 821 S.W.2d 682, 687 (Tex. App.—San Antonio 1991, no pet.) ("The complaint presented on appeal varies from the objection made during trial and presents nothing for review.") (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); *Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988)). Brittain also extensively cross-examined Liles on self-defense. *Cf. Prytash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("[T]he law of invited error estops a party from making an appellate error of an action it induced."). Brittain's ninth issue is not preserved for our review on appeal.

## CONCLUSION

Because each of Brittain's nine issues is either overruled or not preserved for our review, the judgment of the trial court is AFFIRMED.

Lori I. Valenzuela, Justice

Do Not Publish